Argued January 10; affirmed February 13, 1935

# CAMERON *v.* EDGEMONT INVESTMENT CO.

(41 P. (2d) 249)

*W. B. Shively,* of Portland (John P. Winter, of Portland, on the brief), for appellant.

*C. M. Hodges,* of Portland (Hodges & Gay, of Portland, on the brief), for respondent.

BEAN, J. This is an action for damages for the breach of certain terms of a contract for the sale and purchase of a portion of lots 9 and 10 in block 5, Terwilliger Heights, situate in the city of Portland, county of Multnomah, state of Oregon, described in the contract by metes and bounds. The cause was tried to the court without the intervention of a jury, and a judgment was rendered in favor of plaintiff for $841.75. Defendant appeals.

Plaintiff first brought a suit for rescission of the contract, which was dismissed by this court. See *Cameron v. Edgemont Investment Co.,* 136 Or. 385 (299 P. 698).

On March 29, 1928, defendant agreed to sell to plaintiff, and plaintiff agreed to buy from defendant, a

certain lot for $1,975, which price the plaintiff agreed to pay, as follows: $493.75 at the time the contract was executed, and the remainder of $1,481 in monthly installments of not less than $29, including interest, deferred payments bearing interest at the rate of 7 per cent payable monthly. Plaintiff made the down payment of $493.75, and, beginning with June 1, 1928, plaintiff paid $29 each month on the purchase price up to and including May 1, 1929, making a total of $841.75. The contract, as then executed, provided as follows: "A concrete pavement 18 feet wide shall be laid in the street or lane in front of said lot, and a city sewer installed to serve said lot, all on or before October 1, 1928. * * *"

Plaintiff alleges and claims that defendant breached the contract in the following particulars, among others, that it failed and refused to install a sewer to serve said lot and lay an 18-foot pavement in the street in front thereof, all at its own expense within six months from the date thereof, and the plaintiff was damaged in the sum of $1,341.75.

During the latter part of July or first of August, the provision of the contract was changed by the secretary of defendant in the presence of plaintiff by running a pen through the printed words "and a city sewer installed to serve said lot" and a paper was pasted near the end of the contract, which contained the following words: "When the city installs a sewer to serve the above property the vendor will pay all sums assessed against said lot by said city for such installation." This typewritten slip was initialed by the secretary of defendant and by plaintiff on the left margin of the slip and contract.

As stated by defendant in its brief, when the contract was made the city was installing a sewer in Ter-

williger Heights. It had been assumed that this particular lot could be served with this sewer. Later it was discovered that this was impossible, and for this reason the change in the contract was made.

The answer of defendant has attached to it as an exhibit a copy of the contract as changed, and alleges in paragraph IV of the further answer to plaintiff's complaint: "That the said contract, Exhibit 'A', is the only contract by the parties to this litigation." This is denied by the reply, as follows: "Plaintiff denies paragraph IV of defendant's first further and separate answer and defense, and each and every allegation therein contained and the whole thereof."

The trial court found in regard to the change made in the contract, as follows:

"That during the latter part of July, 1928, the defendant induced the plaintiff to permit it to place a rider on said contract by which said defendant attempted to relieve itself of its contractual obligation to install said sewer to serve said property and to shift said obligation to the city of Portland, and making no provision when said sewer should be installed, if ever, by said City, which said change or attempted modification of said contract, was without any consideration whatsoever therefor"

and made the following conclusion of law:

"That the change in the contract by which the defendant attempted to relieve itself of the obligation of installing a sewer and to shift said obligation upon the City of Portland is void."

The court found by reason of the breach of said contract by the defendant that plaintiff has been injured in the sum of $841.75, and rendered judgment accordingly.

Neither the defendant nor the city has ever installed that sewer. It appears that on March 29, 1928, de-

fendant's agent delivered to plaintiff a written contract prepared by defendant, which was introduced in evidence, which she signed, the original of which he retained, and at that time plaintiff made the balance of the down payment to said agent. The defendant, although it retained the down payment made under this contract, never signed the same. This contract, at the same place that the rider mentioned was attached in the subsequent contract, contained the following in typewriting: "A sewer is to be installed to serve said lot and an 18-foot concrete pavement laid in street in front thereof, all at the vendor's expense, within six months from the date hereof." Subsequent to May 5, 1928, defendant prepared a second contract which it signed and therein gave plaintiff credit for the down payment which she made on the first contract. This second contract was sent to plaintiff. Plaintiff made the June 1 and July 1, 1928, payments of $29 each. On July 23, 1928, defendant wrote plaintiff a letter in which she was advised that her best interests required that the contract should be corrected and that she should bring it in for that purpose. Following this plaintiff presented her contract to the defendant. Thereupon defendant changed its terms and attempted to relieve itself of its obligation by the rider. In connection with the matter of changing the language of the contract we quote plaintiff's testimony as follows:

"Q. After you received that letter, dated July 23rd, from the Edgemont Investment Co., did you go any place?

\* \* \* \* \*

A. I went up to see Mr. Shively, because it asked that I come in to see him.

Q. Was there anything done when you went up there?

A. Yes; he had a little slip of paper, printed or typewritten, and he put that on the contract.

\* \* \* \* \*

Q. Now, was that on there when you originally signed it?

A. No, it was not.

Q. Then you signed it when you went back to—

A. When Mr. Shively wrote and asked me to come in.

Q. That was about when?

A. About the first week in August.

Q. What year?

A. 1928. He told me it was to my advantage to have that signed.

Mr. Shively: You initialed it on the side, didn't you? You approved it at the time?

A. Yes, you told me to put it there.

Mr. Shively: The reasons we gave to you were satisfactory, weren't they?

A. I didn't know; I thought you were a lawyer and were looking out for my interests, because you were one of the men in the Edgemont Investment Company. I always treated people with honesty myself, and I expect that much in return. \* \* \* I wouldn't have signed it if I had known.

\* \* \* \* \*

Q. Now, at the time that was put on there, was there anything given to you or paid you for putting it on?

\* \* \* \* \*

A. No, sir.

Q. No money or property of any kind whatsoever for putting that on?

A. No, sir.''

Defendant's assignment of error is that the lower court erred in concluding that the modification of the contract with reference to the sewer was void for lack of consideration. The plaintiff asserts and contends that the stipulations in the contract whereby the

vendor agreed to sell the land and then improve it, all for a single consideration, are mutual and dependent covenants. Citing *Pennings v. Giboni*, 86 Or. 110 (167 P. 598, 1014) ; *Ihrke v. Continental Life Ins. Co.*, 91 Wash. 342 (157 P. 866, L. R. A. 1916F, 430), and other cases.

Defendant's assignments of error raise the questions, first, that the modification was supported by ample consideration; second, that under the particular circumstances no consideration was necessary to support the modification; third, that the modification having been made prior to the time fixed for performance, plaintiff is now estopped to say that defendant, who relied on plaintiff's waiver, should now be held in default for lack of performance of the original contract.

■ Defendant provided in its contract for but one consideration and made time of performance the essence of the contract. The property which it agreed to sell was unimproved and it agreed to improve the same to make it saleable. The property was to be conveyed as a whole; that is, the lot with an 18-foot pavement and a sewer connected to serve the lot. It was all one contract. The whole property was to be conveyed to plaintiff, as agreed, for one price. We think the contract was one in which the covenants to lay the pavement and install the sewer were dependent, and that plaintiff was not required to purchase the property without such improvements being made. To compel plaintiff to purchase the property without the sewer being installed or without the pavement would be making a new contract for the parties, which the court should not do.

■ It is stated in 13 C. J. 592, § 607, in substance, that a modification of a contract being a new contract, a consideration is necessary to support the new agreement, as, for example, where it is to extend the time

for performance or payment or to release one of the parties from performance. Although some cases hold that no new consideration is necessary, the theory being that the original consideration attaches to and supports the modification, such cases are criticized in *Shriner v. Craft,* 166 Ala. 146 (51 So. 884, 28 L. R. A. (N. S.) 450, 139 Am. St. Rep. 19), where the court said: "While there are some expressions in the cases which seem to dispense with the necessity of a consideration to a modification of a contract, yet a modification can be nothing but a new contract, and must be supported by a consideration like every other contract." *George v. Lane,* 80 Kan. 94 (102 P. 55); *Weed v. Spears,* 193 N. Y. 289 (86 N. E. 10). Mutual obligations assumed by the parties at the time of the modification without doubt constitute a sufficient consideration. If one of the parties does not assume any obligation or release any right, then the promise by the other is a nudum pactum and void: *Grath v. Mound City Roofing Tile Co.,* 121 Mo. App. 245 (98 S. W. 812).

█ In the present case the defendant, by the original contract, plainly agreed to install a sewer at its own expense to serve the lot. In the proposed modification nothing is added to the promise of defendant. The modification purports to release the defendant from its obligation to install the sewer on or before October 1, 1928, which was a valuable right in favor of plaintiff. This was proposed to be released without any consideration or benefit passing from defendant to plaintiff, or any detriment to the company. The proposed modification was to change the time of installation of the sewer from the definite date of October 1, 1928, to an indefinite, visionary promise to pay for the assessments for the sewer, if it were ever constructed by the city, which promise was not worth one farthing to

plaintiff. There was no mutuality expressed in the rider. The city had already installed, or was installing, a sewer for Terwilliger Heights, but it could not be made to serve the lot in question. There is no pretense or suggestion that the city contemplated the construction of another sewer in that locality, or that it was expected by any one that it would do so. The plaintiff vendee may as well have released the company from its obligation to lay a concrete pavement, and for that matter have released the vendor from its obligation to cause to be delivered to the vendee a deed of the premises upon full payment and compliance with the contract on her part, for an indefinite time, without any consideration or remuneration in any way on the part of defendant: *Wilson v. Ellis* (Tex. Civ. App.) 106 S. W. 1152, L. R. A. 1915B, note on page 11.

As stated by former Mr. Justice BEAN in *Burkhart v. Hart,* 36 Or. 586 (60 P. 205) referred to in *Pennings v. Giboni,* supra, at page 117:

"There is no arbitrary test by which the question can be determined. The old decisions turned upon a technical construction of the language used, but the modern doctrine is that a contract should be construed according to the meaning and intention of the parties. It is unnecessary for us to make special reference to the several rules upon the subject or the various decisions of the courts. It is sufficient to say that, in the absence of very clear indications to the contrary, promises each of which forms the whole consideration for the other, will not be held to be independent of one another, and a failure of one party to perform on his part will excuse the other from liability to perform."

There is nothing in the record to indicate that the parties to the contract in question meant or intended that the covenant for laying the sewer was an independent covenant.

Anent the matter of consideration, we find in the brief of the learned counsel for defendant that due to changed and unforeseen conditions she (plaintiff) was asked to forego or waive this right to permit the city to install the sewer and promised by the defendant that the latter would pay for the sewer when the city installed it, and further that "the detriment to the plaintiff—the promisee—was the delay in the installation of the sewer; the benefit to the defendant—the promisor—was the relief it obtained from the condition of the contract * * *''. As stated by defendant, plaintiff was asked to forego or waive this right to have the defendant install the sewer to serve the lot, and for this relinquishment or release plaintiff was entitled to some consideration from defendant in order to make the contract binding. Instead of that, as shown in the quotation, while it was a benefit to defendant it was a detriment to the plaintiff.

It is claimed on behalf of defendant that it assumed a new obligation to pay for the sewer. As we have already indicated, we do not consider that any new obligation was assumed, as shown by the record herein.

We read in a note to L. R. A. 1915B, page 40: "A compromise in which one party makes the entire concession and receives nothing in return lacks mutuality, and hence is not binding: Red Cypress Lumber Co. v. Beall, 5 Ga. App. 202, 62 S. E. 1056."

"An oral agreement making a failure to perform a covenant or condition of a sealed contract equivalent to performing it, without any reciprocating advantage whatever, is void for want of consideration: Signer v. Newcomb, 42 Hun. 655, 6 N. Y. St. R. 315."

■ It is the rule that a promise to pay one for doing something he was under a prior legal duty to do is not binding for want of a consideration: *Smith v. Bartholo-*

*mew,* 1 Met. 276 (35 Am. Dec. 365); *Com. v. Johnson,* 3 Cush. 454; *Pool v. Boston,* 5 Cush. 219; *Warren v. Hodge,* 121 Mass. 106, found in L. R. A. 1915B, p. 44.

We do not find, either in the language of the rider or elsewhere, any consideration for the blotting out or cancelling of the provision that the lot should be improved by "a city sewer installed to serve said lot" at the vendor's expense.

*Miller v. Beck,* 72 Or. 140 (142 P. 603), a case much like the one in hand, the opinion of which was written by the late Mr. Justice BURNETT, at page 148, shows that Miller engaged to buy and the company obligated itself to sell not only two lots but also "a right of way for road purposes along the tracts 32 and 33 until * * * such time as the 20-foot road along the front of tracts numbered 24 and 25 shall have been opened", mentioned in the contract. It is stated: "The writing bound the seller to a right of passage along the north line of 32 and 33 until the other road was opened." Beck, who assumed the performance of this contract, must furnish one or the other a right of way. His failure to do so constituted a situation of which Miller had the right to avail himself as a breach of the contract by Beck. "Miller, therefore, had a right to act upon this infraction, rescind the contract, and sue for damages resulting from the breach * * *." It was there held that it was not necessary for Miller to perform the contract or to tender payments subsequently due as a condition precedent to maintaining the action.

We hold that the stipulations in the contract whereby the vendor agreed to sell the lot and improve it prior to the time of the fulfillment of the contract on the part of plaintiff and the passage of title and conveyance of the land, all for a single consideration, are mutual and dependent covenants: *Pennings v. Giboni,* supra; *First*

*Nat. Bank in Salem v. Morgan,* 132 Or. 515, 530 (284 P. 582, 286 P. 558), where Mr. Justice RAND discusses the question so thoroughly that it leaves no room for further argument. See also 5 Page on Contracts, p. 5185, §§ 2941-2951; *Werner v. Zintsmaster,* 61 F. (2d) 298.

 The clause making time the essence of the contract is binding upon both parties and is not to be employed at the mere discretion of the vendor: *Johnson v. Berns,* 111 Or. 177 (209 P. 94, 224 P. 624, 225 P. 727). Where the vendor neglects or fails to make improvements within the time specified in his covenant, time being expressly made the essence thereof, this constitutes a breach or abandonment of the contract which releases the purchaser from further performance: *Miller v. Beck,* supra; *Pennings v. Giboni,* supra; *Taylor v. Tripp,* 97 Or. 611 (191 P. 1054); *Tennant Land Co. v. Nordeman,* 148 Ky. 361 (146 S. W. 756). Where the vendor breaches his contract the vendee may maintain an action for damages for such breach: *Woodard v. Willamette Val. Irr. Co.,* 89 Or. 10 (173 P. 262); *Cornely v. Campbell,* 95 Or. 345 (186 P. 563); *Helgeson v. N. W. Trust Co.,* 103 Or. 1 (203 P. 586). Where a part of the purchase money has been paid the measure of damages for such breach in an action by the purchaser against the vendor is the difference between the value of the property at the time of the breach and the amount of the purchase money that remained to be paid: *Jennings v. Oregon Land Co.,* 48 Or. 287 (86 P. 367); 66 C. J. 1592, § 1710. Under the rule in the Jennings case, the plaintiff would have been entitled to damages to the amount of the difference between the value of the property with the sewer connected, as per contract, and the amount of the purchase money that remained to be paid. The value of the lot October 1, 1928, without the

sewer being connected, was shown to be about $2,000, so that the amount of damages found by the trial court, $841.75, was less than the amount that would be allowed under that rule. Plaintiff did not appeal and is not complaining.

We do not question the principle stated in defendant's brief as follows:

"Any contract, bilateral in the advantages and obligations given and assumed, may at any time after it has been made, and before a breach of it has occurred, be changed or modified in one or more of its details, by a new agreement also bilateral, by the mutual consent of the parties, without any new, independent, or distinct consideration. L. R. A. 1915B, 17."

It is agreed, we think, that the original contract was bilateral or reciprocal in its advantages and obligations. The new agreement, or claimed modification is, as we have indicated, not a bilateral or reciprocal agreement but wholly one-sided. Miss Cameron was to release the company, for an indefinite time, from constructing a sewer on or before October 1, 1928, to serve the lot, without any concession or remuneration whatever. The arrangement was entirely lacking in mutuality. A bilateral contract is: "A contract in which both the contracting parties are bound to fulfil obligations reciprocally towards each other." I Bouvier's Law Dict.

■ But it is contended that, relying on the proposed modification, the defendant permitted the condition to continue until the filing of plaintiff's complaint. We do not find that defendant did anything or failed to do anything on account of the modification. Indeed, it is claimed by defendant that it was impossible for it to connect the city sewer so as to serve plaintiff's lot. The matter simply stood just as it was, and we do not

think that plaintiff is in any way estopped to assert her rights. Plaintiff showed that she had made the payments on the contract to the amount of $841.75, and that defendant failed to and is unable to perform its part of the contract. Therefore, the record shows that she has been damaged at least to that extent.

The findings of the trial court are, under our statute, of the same force and effect as a verdict of a jury. The testimony sustains the findings.

The judgment of the circuit court is affirmed.

CAMPBELL, C. J., and BAILEY and RAND, JJ., concur.